NATIONAL LABOR RELATIONS
BOARD
v.
CROWLEY'S MILK CO., Inc.
(Paterson Division).
No. 11061.

United States Court of Appeals,
Third Circuit.

Argued Sept. 18, 1953.

Decided Nov. 13, 1953.
Rehearing Denied Dec. 22, 1953.

Fannie M. Boyls, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Melvin Pollack, Atty., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Marcus Manoff, Philadelphia, Pa. (Dilworth, Paxson, Kalish & Green, Philadelphia, Pa., Lloyd C. Anderson, Binghamton, on the brief), for respondent.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

In the present petition the National Labor Relations Board is asking for judicial enforcement of two related orders issued in the same case. The first, entered March 13, 1950, directed the employer, Crowley's Milk Company, to cease and desist from recognizing and assisting a particular labor union, Paterson Local of United Dairy Workers Association, until the representative status of the Association should be determined. In addition, the employer was restrained in general terms from interfering with employees in the exercise of their right of self-organization. The order also required the employer to withdraw its formal recognition of the Association, to reinstate and to make whole certain employees who had not been reemployed after a strike, and to post appropriate notice of compliance.

The employer complied with this order except that it filed certain objections to the provisions which required the reinstatement and compensation of the employees in question. Thereupon, the Board remanded this phase of the matter to its Division of Trial Examiners for further hearing and the taking of testimony on reinstatement rights of the strikers. On this hearing it appeared, and the Board later found, that "of the 14 strikers for whom reinstatement had been demanded, only [Gerald] Smith evinced any further interest in the proceeding." Accordingly, on February 4, 1953 a supplementary decision was rendered, limited to findings and an order requiring the reinstatement of Smith with back pay.

Thus, as the matter comes before us, the reinstatement and reimbursement of a single employee is the only thing ordered by the Board which the employer is refusing to do. However, despite this small compass of the surviving controversy, many contentions have been briefed and argued here for the employer in opposition to the Board's order. A few of them call for particular comment.

The Board's theory of this case is that a group of Crowley employees, including Smith, began an economic strike on April 28, 1948, and that about May 11, 1948 this became an unfair labor practice strike because of certain improper conduct of the employer. Accordingly, the Board deemed it appropriate to restrain these unfair labor practices and to provide, among other remedial requirements, that employee Smith be accorded reinstatement rights measured by the situation which existed when the strike became an unfair labor practice strike.

The employer argues at length that its bargaining with and other alleged preferential treatment of the Association up to mid-May, 1948, the acts which the Board has characterized in this case as unfair labor practices at a time when a controversy existed concerning representation, were justified and proper. The employer also argues that the strike of April 28, 1948 was illegal from its inception. Both of these lines of argument depend upon the premise that during the spring of 1948 the employer and the Association were bound by a contract which made it the duty of the employer to recognize the Association and to bargain with it as the exclusive representative of the em-

ployees. However, in the present administrative proceeding "official notice" was taken of the Board's earlier Decision and Direction of Election, Case No. 2–R.C.–188, reported as Crowley's Milk Co., Inc., 79 N.L.R.B. 602, wherein the Board, considering whether the situation at the Crowley plant during the very period now in controversy warranted the ordering of an election to select a collective bargaining agent, held that the pre-existing contract between Crowley and the Association had expired according to its terms at the end of February 1948. This is what the Board found and said:

"On March 1, 1947, the Employer and the Intervenor [the Association] executed a collective bargaining contract for a term of 1 year with provision for automatic renewal from year to year thereafter, unless either of the parties served notice upon the other, not less than 30 days prior to the expiration date, 'of intent to negotiate a contract on different terms.' On January 22, 1948, the Intervenor sent a letter to the Employer stating that it was 'ready to negotiate for our 1948 contract.' On February 11, 1948, the Intervenor rejected and returned by mail a proposed new contract submitted by the Employer. * * *

"* * * * *

"We find that the Intervenor's letter of January 22, 1948, and its subsequent negotiations with the Employer were sufficient to forestall the automatic renewal of the 1947 contract."

There were no further proceedings in this matter because the request for an election was withdrawn. Accordingly, in the present proceeding it seems to be assumed that the employer is not barred from challenging the quoted finding. Accepting that position, we have re-examined the matter and are satisfied that the Board, considering a mixed question of law and fact, was fully justified in concluding that the 1947 con-

tract had not been renewed but ceased to bind the parties at the end of February 1948. This termination of the contractual obligation between the employer and the Association leaves no foundation for the employer's present claim that its continued preferential treatment of the Paterson Association in the face of an admitted challenge of another union was justified, or that the efforts of the employees to compel recognition of the rival union were unlawful from their inception.

The employer makes other points with reference to the reinstatement order itself. Purporting to follow the approach of this court in N.L.R.B. v. Kingston Cake Co., 3 Cir., 1953, 206 F.2d 604, the employer claims that the 1948 strike was attended by such violence and such a secondary boycott that the purposes of the National Labor Relations Act, as amended, are not effectuated by requiring the reinstatement of Smith. Accordingly, it says that the Board's reinstatement order is an abuse of discretion.

Any such claim of impropriety in Smith's reinstatement must be evaluated in the light of what he personally did or authorized. N.L.R.B. v. Deena Artware, Inc., 6 Cir., 1952, 198 F.2d 645; see N.L.R.B. v. Wallick, 3 Cir., 1952, 198 F.2d 477, 485, note 10. It must also be determined as a fact whether Smith's participation in secondary picketing was directed at coercion of employees of employers other than Crowley in the course of their employment, contrary to the policy of Section 8(b)(4)(A) of the Act, 29 U.S.C.A. § 158(b)(4)(A), or whether he did no more than attempt to persuade consumers not to use Crowley products. Cf. Capital Service, Inc., v. N.L.R.B., 9 Cir., 1953, 204 F.2d 848. These matters are controlled by the Board's specific findings concerning Smith's personal activities as a striker as follows:

"* * * on the first or second day of the strike Smith was one of a group of 12 men who conducted a picket line in front of the garage

door of the Crowley plant in Paterson. Francis Crowley, the Respondent's vice-president and general manager, testified that the pickets were orderly, but 'it was necessary for me to call the Paterson Police Department to have this circle of strikers broken up enough so that we could pass in and out of the property.' The police, according to Crowley, dispersed the picket line within 30 minutes of the time it was formed. No evidence was adduced in support of Crowley's statement that it was necessary to break up the picket line to allow entrance to or egress from the plant, nor was it shown that any person or vehicle was impeded in any way from entering or leaving the property."

The Board also approved the following finding of the Trial Examiner:

"Said Gerald Smith picketed places of business of Respondent's customers; and exposed to the public a placard, requesting the public, and such customers, not to buy Respondent's products, in front of places of business of various customers of Respondent within a 12 mile radius of Respondent's plant."

We have examined the record and are satisfied that these are reasonable and permissible findings of the extent of Smith's activities. They reveal nothing which would make his reinstatement in any way inconsistent with the policies of the Act.

The employer also raises a question concerning the availability of work which Smith was qualified to do at the time Smith became entitled to reinstatement. It is admitted that for some three years before the strike Smith had been employed either as a "cooler man" or, if the employer's present job analysis be accepted, a "cooler man helper". When he sought reinstatement there was an existing position of "cooler man" in the plant filled by an employee hired after May 11, 1948, the date upon which the strike became an unfair labor practice strike. This employee performed duties like those formerly assigned to Smith and had certain additional responsibility for recording data. The critical issue on this phase of the case is whether Smith was qualified to perform these additional duties. The Board expressly found "that at all relevant times Smith was qualified to carry out the duties of a 'cooler man'". We are satisfied that the Board made a reasonable evaluation of the evidence in thus concluding that Smith was competent to fill the available job.

We have examined all of the employer's other contentions, among them an argument of laches, a challenge to the Board's procedure in inquiring into the matter of reinstatement rights and an exception to the generality of the language restraining the employer from interfering with employees' organizational activities. We think they are not sound.

The orders of March 13, 1950 and February 4, 1953, except for reinstatement and back pay provisions of the former which have been superseded by the latter, will be enforced.