**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Irving LAMBERT, Murray B. Lambert, and Seymour Lambert, d/b/a Sue-Ann Manufacturing Company, Respondents.**

No. 14568.

United States Court of Appeals
Fifth Circuit.

Jan. 14, 1953.

Stephen Leonard, Assoc. Gen. Counsel, N.L.R.B., Arnold Ordman, Julius G. Serot, Dept. of Justice, Washington, D. C., for petitioner.

Emil Corenbleth, Dallas, Tex., for respondents.

Before HUTCHESON, Chief Judge, and RIVES and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

By petition filed in this court March 23, 1957, and upon allegations that respondents had disobeyed, and failed and refused to comply with, the decree of this court entered pursuant to its opinion in 211 F.2d 91, in that they had failed and refused and were failing and refusing to bargain collectively with Dallas Joint Board, International Ladies Garment Workers' Union, petitioner sought an adjudication in civil contempt.

Respondents, answering the petition and supporting its answer with the affidavit of Irving Lambert, one of the respondents, and of Emil Corenbleth, who, as attorney for the respondents, had with Lambert conducted the negotiations with the Union, denied the charges against them and affirmatively alleged that they had faithfully and in all respects complied with the decree.

Petitioner, in its turn, supporting its reply with the affidavit of Charles Morris who, as its attorney, with Elizabeth Kimmel, had for the Union conducted the bargaining negotiations, replied to the answer denying its allegations and reasserting the claim it had made in its original petition that respondents had refused to obey the decree and were in contempt thereof.

Thereafter the matter came on for hearing and was heard by the court on affidavits and the oral testimony of the affiants, supplemented on the part of petitioner by the testimony of Elizabeth Kimmel, and the matter stands for decision here on the record thus made and the arguments of the parties on the sole issue whether the petitioner has sustained its burden of showing that the respondents, as charged, did not bargain with the Union in good faith.

While some of the conclusions from the facts are in dispute in the sense that each side claims that the other was adamant in standing to its position and that the fault was not on its side but on that of the other, in the main the controlling facts are undisputed. They are: that on April 8, 1954, this court entered its decree herein enforcing an order of the Board issued against respondents on March 28, 1952; that prior to the entry of the decree but pursuant to the opinion, the Union requested the respondents to meet for the purpose of negotiating a bargaining contract, and the respondents promptly met and negotiated with the Union at the following meetings, March 21st, April 12th, April 14th, April 19th, April 24th (it was at this meeting that Mr. Perlstein, Vice-President and Managing Director of the Region, was present), May 3rd, May 6th, and June 2nd, 1954; that at the last meeting respondents were advised that the Union considered continuance of the negotiations futile;[1] and that no further request was made to bargain and no action was taken in respect to the matter until nearly three years later when the petition was filed.

As shown by the affidavits and the testimony during these negotiations, there were proposals and counterproposals

[1.] This is the way Morris for the Union, in his affidavit, states the ending of the negotiations:

"The Union did not break off negotiations but simply stated that it was futile to go on so long as the company was remaining adamant in its attitude on each item of bargaining which was quite evident from the latter meetings. We said that if the company changed its position on anything, we stood ready and able to meet on reasonable notice and in fact desired such a meeting in that event."

Mr. Lambert states it this way:

"Mr. Morris stated that he did not think we could get together and that the grievance clause does not put the Union in a good light and that they are not closing the door but they would take legal steps and there would be no more bargaining."

This is the way Corenbleth states it:

"We thought real progress was made at the May 3rd meeting and on May 6th I submitted a formula to Mr. Morris for piece rates and breakdown clause. In the June 2nd meeting we were surprised to find only Mr. Morris present. He agreed with the piece rate and breakdown clauses but he said he was afraid we couldn't get together, that there would be no more bargaining."

made by the respondents and the Union, each endeavoring to obtain for itself the best contract possible.

Petitioner, in support of its contention that, although ostensibly bargaining with the Union, respondents did not bargain in good faith and with the purpose of negotiating a contract, but in bad faith and with the purpose of defeating such negotiations, argues that they put forward proposed conditions which they knew the Union could not and would not accept and adamantly insisted on contract provisions which would have undermined and by-passed the Union as the collective bargaining representative of the employees, with the intent and result of creating an impasse in the negotiations and bringing about their failure.

The respondents vigorously deny these charges, and citing N. L. R. B. v. American National Insurance Co., 5 Cir., 187 F.2d 307, affirmed 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027, in support of their right to bargain in good faith by proposing and counterproposing, urge upon us that the record fails to show that they acted unfairly and unreasonably in the bargaining conferences or were in any way responsible for a cessation and breaking off of the bargaining. They say, on the contrary, that the record as a whole affirmatively shows that it was the conduct and attitude not of the respondents but of the Union which, creating an obstructive and frustrating climate of opinion, made the negotiations difficult, if not impossible and brought their ending on the Union's statement that it was futile to go on. (Note 1, supra.)

Insisting that at no time did they take an adamant stand or refuse to negotiate or to meet, respondents insist that the shoe is quite on the other foot and that it was not they but the Union which refused to bargain in good faith because it could not obtain the concessions which it consistently and adamantly demanded.

We find it unnecessary to detail or discuss the evidence as to what occurred meeting by meeting. It is sufficient to say that in the beginning of the negotiations the Union and the respondent were negotiating apparently without rancor and with the idea in the mind of each of the negotiators to obtain the best contract that it could for its own side. At the April 24th meeting, however, charges were made and things said by Mr. Perlstein which made it impossible to continue that meeting on a friendly or even civil basis.

We think, too, that the feelings manifested and the things said at this meeting by Mr. Perlstein, the Union representative, engendered a spirit and feeling which colored and affected the negotiations and made it difficult if not impossible to continue them in friendly spirit and feeling with which they had begun, and that it was these feelings which were largely instrumental in bringing the last meeting to a close with the announcement by the Union that they felt that the company was not negotiating in good faith and that further negotiations were futile.

■ What might have happened but for the intervention of Mr. Perlstein and his provocative charges and language, would be mere speculation. With the record, however, standing as it is, with his influence and language unexpunged from it, we think that the petitioner's burden to establish that the respondents were responsible for the breaking up of the negotiations as a result of a settled plan on their part to bring this about by bargaining unfairly, is far heavier than it can bear.

■ But these circumstances aside, in view of the undisputed facts that in 1954 the Union withdrew from the conference meeting with the statement that it was futile to go on, that it made no further request for bargaining, and that no further action was taken in respect to the matter of bargaining until three years later when, in 1957, this petition was filed, we think it plain that the petition must be denied. The testimony of respondents' witnesses: that though they were negotiating for the best contract they could make they were bargaining in good faith; that they had not taken an adamantine position on any point; and that they had no intention or desire to break

off negotiations but would have continued to bargain if the Union had not broken them off; is clear, positive and convincing and consistent with the record as a whole. In view of this testimony and of the undisputed facts of record, we think there is no basis whatever to support the findings in effect asked for by petitioner: that, though the Union broke off the negotiations, it was the respondents who were responsible for their breaking off, in that they had entered upon and had continued the negotiations unfairly and without any purpose to reach a contract; that they did this with the idea of forcing the Union to give up in despair; and that by June 2nd, they had accomplished their purpose.

The petition is, therefore, Denied, the respondents are discharged, and the contempt proceeding is Dismissed.