## NATIONAL LABOR RELATIONS BOARD
## v. DEENA ARTWARE, Inc.
### No. 11156.

United States Court of Appeals
Sixth Circuit.

July 30, 1952.

Samuel M. Singer, Washington, D. C. (George J. Bott, David P. Findling, A. Norman Somers, Marcel Mallet-Prevost, Samuel M. Singer, Washington, D. C., on the brief), for petitioner.

James G. Wheeler, Paducah, Ky. (James G. Wheeler, Thomas J. Marshall, Jr., Wheeler & Marshall, Paducah, Ky., on the brief), for respondent.

Before SIMONS, Chief Judge, and MARTIN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The National Labor Relations Board has petitioned for the enforcement of its order of October 25, 1949 against the Respondent, Deena Artware, Inc., pursuant to § 10(e) of the National Labor Relations Act as amended, 29 U.S.C.A. § 160(e). Respondent is a Kentucky corporation engaged in the manufacture and distribution of pottery lamp bases at Paducah, Kentucky, and is engaged in interstate commerce.

▌ The following facts, as found by the Board, are supported by substantial evidence on the record considered as a whole, and are accordingly accepted on this appeal.

Following organization activities on behalf of the United Brick and Clay Workers of America, a Union affiliated with the American Federation of Labor, an election was held on March 17, 1948, at which a majority of the employees in the appropriate unit voted for the Union, which was thereafter certified by the Board as the exclusive bargaining agent of the employees.

On March, 16, 1948, the day preceding the election, George H. Weiner, Respondent's President, addressed the assembled employees, referred to the privileges enjoyed by the employees in the past, and warned them that if the election was won by the Union they would lose their "privileges and freedoms." A few days after the election, Weiner addressed the employees in the Casting Department, stating that he was going to show them what he could do for having stabbed him in the back. He also addressed the employees of the Mold Department, discussed the privileges the employees had previously had, stated that they had chosen their "side" and had stabbed him in the back, and that thereafter "everything would be carried out in a business proposition." In April, following one or two meetings between the Respondent and the Union's Negotiating Committee, Weiner, in an angry mood, told members of the Committee in his office that they had chosen their side and "if you people are out of work and starving, it won't be my fault." During the latter part of March, the Respondent reduced working hours from 48 hours to 40 hours per week, which eliminated overtime earnings. It posted signs prohibiting smoking outside the rest room, which had been previously permitted. It abolished the practice of permitting employees who had completed their day's work to walk outside the plant and revoked the existing privilege of interchanging work shifts by the kiln employees. On July 22, 1948, a Paducah newspaper published remarks made by Weiner to its reporter to the effect that, because of the Respondent's dissatisfaction with the Paducah labor situation, work on an addition to the plant at Paducah would cease and that the unit would be constructed at Arlington, Kentucky; that the original plans to move Respondent's entire operation over a period of time into Paducah were being abandoned, but that he would keep operating what he had in Paducah unless hazards and difficulties were thrown in his way.

Following the election the Union requested Respondent to negotiate a collective bargaining contract. The Union was represented by Earl Bellew, an international representative of the Union, by Edmund Grimes, "general organizer" of the A. F. of L. who had headed the organizational campaign, and by ten employee members, one from each department of the plant. The Respondent designated as its negotiating committee plant manager Meriwether, Mrs. Hendren, who was in charge of the office at the plant and acted as personnel manager, and Mrs. Hensen, its office clerk. Meetings were held at the Company's office on April 8, 9, 16, 21, 29, 30 and May 6 and 7.

At the first meeting on April 8th, the Union submitted a proposed contract and requested counter-proposals. At the second meeting on April 9th, Meriwether stated that the Respondent declined to bargain with Grimes because he was not a member or officer of the Union, and directed him to leave the premises. Bellew and the Union's negotiating committee left with Grimes. The succeeding meetings were held without Grimes being present. At the meeting on April 16th, the parties discussed the union proposals and a new wage proposal calling for a 25% general wage increase. At the succeeding meetings the parties discussed the questions of wages, union seniority, overtime, sick leave, holiday and vacation proposals. Although they were able to agree upon certain minor matters, no agreement was reached on the major issues. The Union made concessions in accepting the Respondent's proposal for the payment of time and a half, rather than double time, for work on holidays and in agreeing that seniority be applied by departments instead of on a plant-wide basis. The Union's vacation proposal was substantially in accord with the existing practice. The Respondent's counter-proposal reduced the existing vacation privileges and was rejected by the Union. At the meeting on April 30th, the Respondent orally presented a counter-proposal on wages which Meriwether read from a document. Although it was of a detailed character and difficult to analyze without study, he did not make a copy of it available to the Union. There was considerable difference of opinion about its effect, the Union contending that in reality it did not provide any wage increase. It was rejected by the Union. At the meeting of April 30th, Bellew suggested that the parties seek the aid of the Conciliation Service. Meriwether proposed another meeting without the Conciliation Service. At the meetings on May 6th and 7th, the negotiators discussed all of the issues outstanding, but did not reach an agreement. It was then agreed that the next meeting would be arranged by the Conciliation Service. Following the meeting on May 7th, the Union held a meeting in the late evening, at which most of the members of the negotiating committee were present in addition to a few Union employees not on the committee. It was the view of those present that "We have gone as far as we can get in negotiations," and the participants voted to call a strike. It was moved, seconded and carried unanimously "that we go on strike at the plant of Deena Artware, Inc., 632 S. Third Street, due to the breaking off of negotiations by the Company, and that we give Earl Bellew, International Representative, full power and authority to name the day and hour of the strike.", There was no specific date set for the strike, as it was decided to give the Conciliation Service a chance to help if it was possible to do so. This action did not comply with the procedure prescribed by the Union's constitution for approving a strike of a local.

Thereafter, a Conciliation Commissioner notified the Union and the Respondent that a meeting would be held on May 14th at the office of the Respondent's attorney in Paducah. At Respondent's request, the meeting was postponed to May 26th. On May 24th, the Conciliator telephoned to Meriwether that he could not keep the appointment for May 26th and that he wished to change it to May 28th. Meriwether agreed, but asked if the Conciliator had notified Bellew of the change. The Conciliator stated that he had not been able to get in touch with Bellew but that he had

left a notice for him at the hotel in Paducah where Bellew usually stayed. Bellew lived in Olive Hill, Kentucky, which was some distance from Paducah. Bellew did not receive the message until May 27th, and, accordingly, he, together with several members of the Union's committee, went to the attorney's office at the appointed hour on May 26th, where they were told by an office clerk that the meeting had been postponed until May 28th. Bellew reported the development to the other committee members, and the committee thereupon decided to call a strike at the plant for 2 o'clock that afternoon. Bellew delegated Bill Girten to inform the management of the plant of the strike. Girten told Meriwether and Mrs. Hendren about the Union's plans. Meriwether asked him the reason for the strike and he stated that the Union was not notified of the change of date of the meeting and that Bellew had driven from Olive Hill only to find that the meeting had been postponed. Mrs. Hendren told Girten that the Company was not responsible for the postponement, that the Conciliator had requested it and had advised Meriwether that he had undertaken to notify Bellew at the Ritz Hotel. Girten stated that "the Union was getting the run-around, and didn't like it and wanted to find out who was to blame." Although Mrs. Hendren explained that the postponement of the meeting was something that the Company had nothing to do with and that the employees should not leave their jobs because of an occurrence over which the Company had no control, Girten stated "We are leaving at 2 o'clock."

Fifty-seven employees left the plant at 2 o'clock. Within the next day or two, they were joined by nine other employees. These 66 employees constituted substantially the entire membership of the Local. Picketing activities commenced shortly after the walkout.

The next morning, the Conciliator advised Bellew that he had arranged a meeting for the next day at the Cobb Hotel at Paducah. On the evening of the same day, an attorney for the Union telephoned the attorney for the Respondent and suggested a conference to discuss the possibility of reopening negotiations. The two attorneys met the next morning at which time the Union's attorney proposed that negotiations be reopened between the Union and the Respondent, and that he would then recommend that the employees return to work. The Respondent's attorney replied that he was not authorized to meet with any representative of the Union and that the Respondent took the legal position that they had no employees on strike to negotiate with. When Bellew met with the Conciliator on the 28th at the Cobb Hotel for the meeting arranged by the Conciliator, he was informed by him that the Company had called off the meeting. The Union held a meeting on May 29th attended by practically the whole membership. Bellew reported that the Conciliator had contacted him and that it looked like there might be a chance to resume negotiations. He recommended that they return to work. The membership thereupon passed a resolution that they return to work. Bellew and the committee went to the plant and informed Meriwether that the Union members were ready to return to work. Meriwether conferred by telephone with Respondent's attorney and then informed the committee that it was his understanding that the people who went out on strike May 26th were discharged. Meriwether's testimony was that he stated "that we considered them no longer working for us." The next day a Paducah newspaper quoted Mrs. Hendren as saying that the employees could not be reinstated because they were no longer employees of Deena Artware.

On June 1st, 61 of the striking employees sent a letter to Meriwether offering to return to work. Respondent's attorney replied by letter of June 9th stating that the Respondent did not consider the signers of the letter or any of them employees of the Company. On August 23rd, the Respondent rejected the application of an additional employee for the same reason.

The Board ruled that Respondent's conduct during the negotiations with the Union constituted a refusal to deal with the Union in good faith and violated § 8(a)

(1) and (5) of the Act, § 158(a) (1) and (5) Title 29 U.S.C.A.; Respondent discharged and refused to reinstate 66 of its employees because they had engaged in a strike thereby violating § 8(a) (1) and (3) of the Act, § 158(a) (1) and (3), Title 29 U.S.C.A.; and that none of the 66 employees who were refused reinstatement, engaged in such conduct as to deprive them of reinstatement under the Act. The Board's order directed the Respondent to cease and desist from (a) discouraging membership in United Brick and Clay Workers of America, A. F. L., or in any other labor organization of its employees, by discharging or refusing to reinstate any of its employees; (b) refusing to bargain collectively with United Brick and Clay Workers of America, A. F. L., as the exclusive bargaining representative of all production and maintenance employees; (c) in any other manner interfering with or coercing its employees in the exercise of the right to self-organization; and to take the following affirmative action: (a) offer to the 66 striking employees immediate and full reinstatement; (b) make whole such employees for any loss of pay they suffered by reason of Respondent's discrimination against them; (c) upon request bargain collectively with United Brick and Clay Workers of America, A. F. L., and (d) post appropriate notices at its plant at Paducah.

We are of the opinion that the Board properly ruled from the foregoing facts that the Respondent had interfered with the employees' right to join a Union and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, and thereby violated § 8(a) (1) of the Act. The threats of Respondent's President to withdraw the employees' privileges and freedoms, his references to stabs in the back, the revocation of various privileges after the election, his warning that it would not be his fault if the employees were out of work or starving, and the statement in the newspaper about discontinuing expansion of the plant at Paducah and possible abandonment of the plant entirely if hazards and difficulties were thrown in his way, fully sustain the Board's conclusion. N. L. R. B. v. Mt. Clemens Pottery Co., 6 Cir., 147 F.2d 262, 264; Atlas Underwear Co. v. N. L. R. B., 6 Cir., 116 F.2d 1020, 1023; N. L. R. B. v. Good Coal Co., 6 Cir., 110 F.2d 501, 504, certiorari denied 310 U.S. 630, 60 S.Ct. 978, 84 L.Ed. 1400.

We are also of the opinion that the foregoing facts sustain the Board's ruling that the Respondent refused to bargain collectively with the representatives of his employees and thereby violated § 8(a) (5) of the Act. In contesting the ruling, Respondent points to the numerous meetings held with the Union committee, and to the fact that the Act, although requiring collective bargaining, does not compel the making of any agreement between employer and employees. N. L. R. B. v. Jones & Laughlin, 301 U.S. 1, 45, 57, 57 S.Ct. 615, 81 L.Ed. 893. Just recently, and after this case was argued and submitted, the Supreme Court decided the case of N. L. R. B. v. American National Insurance Co., 1952, 343 U.S. 395, 72 S.Ct. 824, in which it restated the ruling in the Jones & Laughlin case and held that the employer's insistence upon the inclusion of a management functions clause in the bargaining contract was not in itself a refusal to bargain collectively. However, the Court also pointed out that "performance of the duty to bargain requires more than a willingness to enter upon a sterile discussion of union-management differences," that the good faith test of bargaining was retained in the Labor-Management Relations Act of 1947, and that good faith is determined by a consideration of the facts of each case. Respondent's actions, particularly with respect to vacations and wage proposals, furnish a reasonable basis for the conclusion reached by the Board.

The Respondent also refused to bargain with Grimes as a member of the Union's committee. In N. L. R. B. v. Kentucky Utilities Co., 6 Cir., 182 F.2d 810, we recognized the right of management to refuse to bargain with a certain representative of the Union under unusual facts clearly justifying such refusal. But

the facts in this case fall far short of the facts therein involved. The employees have the right to choose their own bargaining representative. The evidence fails to sustain Respondent's contention that Grimes was not authorized to bargain for the Union. In N. L. R. B. v. Kentucky Utilities Co., supra, we held that the Act does not require that the bargaining representative be employed by the Company with which the Union is bargaining. The Respondent's President had invited Grimes to address the employees at a meeting the day before the election and had introduced him as the Union's representative. Grimes' authority to represent the employees was not challenged at the first bargaining conference. Respondent's actions in this respect were a clear violation of the Act. N. L. R. B. v. Jones & Laughlin, 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893; N. L. R. B. v. New Era Die Co., 3 Cir., 118 F.2d 500, 504; N. L. R. B. v. Blanton Co., 8 Cir., 121 F.2d 564, 571; N. L. R. B. v. Sunbeam Electric Manufacturing Co., 7 Cir., 133 F.2d 856, 860.

■ The Respondent also refused to bargain collectively after the strike was in effect. The duty to bargain collectively continues even though a strike is in progress. N. L. R. B. v. Mackay Radio & Telegraph Co., 304 U.S. 333, 345, 58 S.Ct. 904, 82 L.Ed. 1381; Amalgamated Association, Bus Employees v. Wisconsin Employment Relations Board, 340 U.S. 383, 399, 71 S.Ct. 359, 95 L.Ed. 364.

■ Respondent vigorously contends that the striking employees ceased to be employees, with the result that there was no duty on its part to thereafter bargain with them, nor to reinstate them in their former positions when they later applied for reinstatement. The soundness of this contention depends upon the nature of the strike. If the strike was one in violation of the Union's contract with the Respondent, or one not authorized by the National Labor Relations Act, there was no duty on the part of the Respondent to consider the strikers as employees. N. L. R. B. v. Sands Manufacturing Co., 306 U.S. 332, 343–344, 59 S.Ct. 508, 83 L.Ed. 682; Southern Steamship Co. v. N. L.

R. B., 316 U.S. 31, 46–48, 62 S.Ct. 886, 86 L.Ed. 1246; N. L. R. B. v. Bradford Dyeing Association, 1 Cir., 106 F.2d 119; Hamilton v. N. L. R. B., 6 Cir., 160 F.2d 465, 469. However, if the employees ceased work as a consequence of, or in connection with, any current labor dispute, or because of any unfair labor practice, they continued as employees of the Respondent, even though not working while the strike was in progress. § 152(3), Title 29 U.S.C.A.; N. L. R. B. v. Mackay Radio & Telegraph Co., supra, 304 U.S. 333, 347, 58 S.Ct. 904, 82 L.Ed. 1381; N. L. R. B. v. Ohio Calcium Co., 6 Cir., 133 F.2d 721, 726; Hamilton v. N. L. R. B., 6 Cir., 160 F.2d 465, 468.

■ Respondent contends that the strike was not the result of a labor dispute, but was called by Bellew because of his personal inconvenience and anger at not being notified of the postponement of the meeting set for May 26th. The Board found that the Conciliator was responsible for the postponement and that the Respondent was not at fault in the failure of the Union to receive notice. However, it also held that the postponement of the meeting was not the sole cause of the strike, that at most, Respondent's proof tended to establish that the postponement of the meeting touched off the strike, and that considering the events in their entirety, of which the postponement of the meeting was but a single incident, the Respondent's unfair labor practices and the employees' economic demands were the root causes of the strike. We approve the ruling. It was the view of the Union membership on May 7th that "We have gone as far as we can get in negotiations," and a strike was authorized at that time. Whatever single event thereafter was responsible for the effective date of the strike, it in no way eliminates the fundamental fact that the parties were involved in a labor dispute and the failure to reach a settlement was the real cause of the strike. The lack of justification on the part of the employees in attributing to Respondent an unreasonable or arbitrary attitude in connection with the negotiations does not negative the fact that the strike occurred as

a consequence of a current labor dispute. Fault on the part of the Respondent is not a necessary element. N. L. R. B. v. Mackay Radio & Telegraph Co., supra, 304 U.S. 333, 344, 58 S.Ct. 904, 82 L.Ed. 1381; N. L. R. B. v. Stackpole Carbon Co., 3 Cir., 105 F.2d 167, 176.

■ The failure of the Union, in calling the strike, to comply with the provisions of its constitution did not make the strike an illegal one under the National Labor Relations Act. The Act guarantees to the employees the right to strike. § 163, Title 29 U.S.C. The provisions of the Union's charter can not abridge that right. N. L. R. B. v. Star Publishing Co., 9 Cir., 97 F.2d 465, 470; International Union, Automobile Workers v. O'Brien, 339 U.S. 454, 70 S.Ct. 781, 94 L.Ed. 978.

■ The picketing was accompanied by disorder and some violence. At its inception there was a crowd around the entrance to the plant. There was some calling of names and angry remonstrance on the part of some of the strikers against some employees who did not join the strike. There was some personal interference with some of the non-strikers. At the request of the Respondent some policemen were assigned to the immediate area, although none of them were later called as witnesses. During the course of the strike, Harry Bennett, president of the local, made insulting remarks to employees as they left the plant, and threw one or two bricks at an employee named Reynolds. During the night a glass pane in the front entrance and a window in the upper floor were broken by bricks thrown by unidentified persons. Respondent contends such conduct forfeited any right of reinstatement which the strikers would otherwise have had. N. L. R. B. v. Fansteel Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627; N. L. R. B. v. Ohio Calcium Co., supra, 6 Cir., 133 F.2d 721, 727–728. We agree with and approve the rule stated in those cases. But unauthorized acts of violence on the part of individual strikers are not chargeable to other Union members in the absence of proof that identifies them as participating in such violence. N. L. R. B. v. Ohio Calcium Co., supra, 6 Cir., 133

F.2d 721, 726; N. L. R. B. v. Mt. Clemens Pottery Co., supra, 6 Cir., 147 F.2d 262, 268; Republic Steel Corp. v. N. L. R. B., 3 Cir., 107 F.2d 472, 479; N. L. R. B. v. Stackpole Carbon Co., supra, 3 Cir., 105 F.2d 167, 176–177. See United Brotherhood of Carpenters v. United States, 330 U.S. 395, 403, 67 S.Ct. 775, 91 L.Ed. 973. Although these rulings were prior to the enactment of Section 2(13) of the Labor-Management Relations Act, § 152(13), Title 29 U.S.C.A., we believe they are applicable on review, where the Board has found that agency did not exist. The Board found that much of the disorder and violence was on the part of former employees who had been discharged for cause and whose reinstatement is not in issue, as in the cases of Bennett, Powley, Brooks and Depriest; that none of the 66 employees engaged in unlawful mass picketing; that some of the misconduct was by unidentified persons; that other misconduct on the part of individual strikers was not the type of misconduct which would warrant denial of reinstatement; and that the 66 striking employees were entitled to reinstatement. We agree with the findings and ruling except in the cases of Harold E. Medley, Guy Phelps, Vera Mae Tucker, and Alice Kelley. In our opinion, the conduct of these four striking employees was such as to justify a denial of their reinstatement.

■ Respondent also argues that the right of reinstatement was forfeited by the act of the Union in extending the picket line so as to include adjoining property owned by Respondent, on which a new plant was being constructed for Respondent by independent contractors, Vandevelde and Augustus. It contends that the picketing of this property caused the construction work to be discontinued because the employees of the contractor refused to cross the picket line, which constituted a "secondary boycott" prohibited by § 8(b) (4) (A) of the Labor Management Relations Act; § 158(b) (4) (A), Title 29 U.S.C.A.; N. L. R. B. v. Denver Building Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; International Brotherhood of Electrical Workers v. N. L. R. B., 341

U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299; Local 74, United Brotherhood of Carpenter's Union v. N. L. R. B., 341 U.S. 707, 71 S.Ct. 966, 95 L.Ed. 1309.

The Examiner doubted the legal sufficiency of such a defense, but did not rule on the question, as he was of the view that the alleged defense was factually without merit. He found that the only occasions when the construction workers ceased work as a result of picketing were those when pickets of the Teamsters Union, with whom the contractor had a labor dispute, picketed the construction site, and that the cessations of work were caused by that organization and not by the Union involved in this proceeding. The Board found it unnecessary to adopt this finding, as in its opinion the picketing was confined to the Respondent's immediate premises and was all primary picketing. This was in accord with the ruling of the Kentucky Court of Appeals in Boyd v. Deena Artware, 239 S.W.2d 86, 90, in which the Court declined under the applicable State law to enjoin picketing of the construction site. But in that case the Court did not have under consideration the effect of the Labor Management Relations Act, and for that reason the case does not present the same issue as is presented here.

The "secondary boycott" feature of the labor dispute herein involved is the chief issue in the case of United Brick & Clay Workers of America, etc. v. Deena Artware, Inc., 6 Cir., 198 F.2d 637, a companion case to this case, arising out of the same labor dispute, and in which an opinion is being handed down at this time. A more extended discussion of the issue is made in the opinion in that case, and need not be repeated here. As shown by that opinion, we do not agree with the ruling of the Board as a matter of law, and are of the opinion that whether the Union was guilty of a "secondary boycott" contrary to the provisions of § 8(b) (4) (A) of the Labor Management Relations Act was a factual question for determination under the particular facts of the case. The Examiner found in favor of the Union. The finding is supported by substantial evidence on the record considered as a whole, and is accepted on this review. Accordingly, it becomes unnecessary to consider the legal sufficiency of Respondent's defense on this phase of the case.

The order of the Board will be modified as herein indicated, and enforcement of it as so modified is decreed.