236 F.2d 898
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
WOOSTER DIVISION OF BORG-WARNER CORPORATION, Respondent.
INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, and
Wooster Division of Borg-Warner Corporation, Respondent.
 No. 12687.
 No. 12730.
 United States Court of Appeals Sixth Circuit.
 September 12, 1956.
 
 COPYRIGHT MATERIAL OMITTED Owsley Vose, Washington, D. C. (Theophil C. Kammholz, David P. Findling, Marcel Mallet-Prevost and Irving M. Herman, N. L. R. B., Washington, D. C., on the brief), for N. L. R. B.
 James C. Davis, Cleveland, Ohio, for Wooster Division, of Borg-Warner Corp.
 Lowell Goerlich, Washington, D. C. (Harold Cranefield, Detroit, Mich., on the brief), for International Union, etc.
 Before MARTIN, MILLER and STEWART, Circuit Judges.
 MILLER, Circuit Judge.
 
 
 1
 These cases are before the Court upon a petition by the National Labor Relations Board for enforcement of its order against the respondent Wooster Division of Borg-Warner Corporation, hereinafter called the Company, and upon a petition by International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (UAW-CIO), hereinafter called the International or the Union, to review and set aside so much of the order as dismissed the complaint against the Company. The Company, which is an unincorporated division of Borg-Warner Corporation is engaged at Wooster, Ohio, in the manufacture and sale of fuel and hydraulic pumps. Jurisdiction of the proceedings under Section 10(e) and (f) of the National Labor Relations Act is conceded. 29 U.S.C.A. § 160(e, f).
 
 
 2
 Following an intensive election campaign, the Board on December 18, 1952, certified the Union as the exclusive representative of the Company's Wooster employees. On January 23, 1953, the Union presented a proposed agreement to the Company which referred to the Union as "International Union, United Automobile, Aircraft and Agricultural Implement Workers of America and its Local Union No. 1239, UAW-CIO." The Company submitted counter proposals on so-called noneconomic issues to the Union on February 9th in which it designated the employees' representative as "Local Union 1239, affiliated with the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (UAW-CIO)." The Union's representative told the Company representatives that this provision violated the certification of the Board.
 
 
 3
 This counter proposal of the Company also provided that on issues not subject to arbitration no strike could be called unless a majority of the employees in the bargaining unit, both union and non-union, voted by secret ballot on whether to accept or reject the Company's last offer or any subsequent offer. The Union's representative stated that he would not discuss this ballot proposal because the Union would not accept it under any circumstances.
 
 
 4
 Bargaining conferences were held during February and March. The Union's proposals were substantially the same as were contained in an agreement which it had secured for employees at the Cleveland Pesco Division of Borg-Warner Corporation. The Company submitted its economic proposals on March 11th. They were not satisfactory to the Union. On March 14, the Union distributed among the employees a document showing under 21 separate headings the difference between the Company's offer and the provisions of the Pesco agreement. A strike at the plant was called if no solution of the overall issue was reached by March 20th. There were bargaining conferences on March 17, 18 and 19 without reaching an agreement. At the meeting on March 19, the Union submitted a counter proposal covering thirty issues still in dispute. The Company took the position that its last proposal should be accepted and no agreement was reached. The strike commenced on March 20.
 
 
 5
 Bargaining continued during April. The Company made a final proposal to change the name of the representative to "Local Union 1239 of United Automobile, Aircraft and Agricultural Implement Workers of America." The Union countered with an offer to make its name read "The International, Local 1239." No agreement was reached, the Union insisting that the International be the primary party and the Company insisting that the primary party be the Local. The Company also refused to recede from its insistence upon the employee ballot proposal. On April 21, the Union asked the Company if it would withdraw its demands concerning the recognition and employee ballot provisions if the Union acceded to all the other proposals of the Company. The Company representative stated that the Company thought its proposal was fair and that it should be taken "as it is."
 
 
 6
 On April 25th, the International recommended that the employees accept the best offer they could get from the Company and return to work. On May 5th, a collective bargaining agreement retroactive to March 20th was entered into between the Local and the Company, which recognized the Local as the exclusive bargaining agent and contained the disputed employee ballot proposal.
 
 
 7
 The Union filed its initial charge on April 7, 1953. Following hearings and the Intermediate Report of the Trial Examiner, the Board, with two of its members dissenting, held that the Company did not propose its recognition and employee ballot clauses as matters which the Union could voluntarily accept or reject, but adamantly insisted upon the inclusion of these two clauses as a condition precedent to the execution of any agreement; that its liability under Section 8(a) (5), 29 U.S.C.A. § 158(a) (5), turned not upon its good faith, but rather upon the legal question of whether the proposals were obligatory subjects of collective bargaining; that the Company was obligated to accord exclusive and unequivocal recognition to the statutory representative and that its insistence upon making the Local not only a party to the agreement but the only party empowered to represent the employees was in complete derogation of the certificate; that the employee ballot proposal was simply an attempt to resolve economic differences at the bargaining table between an employer and the statutory agent by dealing with the employees as individuals, which was in derogation of the status of the statutory representative and violated the representation concept embodied in the Act. It held that the Company by adamantly insisting upon the inclusion of its proposed recognition and employee vote clauses as a condition to the execution of any contract refused to bargain in violation of Section 8(a) (5) of the Act.
 
 
 8
 The Board also held that the Company had interfered with its employees in violation of Section 8(a) (1) of the Act by soliciting them to abandon the Union and return to work, and by having advised the strikers that they would be, and were, deemed to have quit their jobs by failing to return to work by April 20th.
 
 
 9
 The Board held, however, contrary to the Trial Examiner, that the strike resulted from the parties' failure to reach agreement on the economic issues in dispute, and was not attributable to the Company's insistence on its recognition and employee ballot proposals. It was accordingly not an unfair labor practice strike entitling the strikers to reinstatement as a matter of right. It dismissed so much of the complaint as charged the Company with refusing to reinstate any employee in violation of Section 8(a) (3) and (1) of the Act. The Union seeks a review of this ruling.
 
 
 10
 The Order, enforcement of which is now sought by the Board, directed the Company to cease and desist from (1) refusing to bargain collectively with the Union; (2) insisting upon the recognition of a union other than the statutory representative and insisting upon employee ballot proposals, or any other proposals not involving conditions of employment; (3) soliciting or threatening with loss of employment the striking employees; and (4) in any other manner interfering with its employees in the exercise of their rights under the Act. It affirmatively directed the Company to bargain collectively with the Union with respect to rates of pay, hours, and other conditions of employment, and if an understanding was reached, embody such understanding in a signed agreement.
 
 
 11
 The Board in its ruling takes the position that the Company's liability to bargain collectively under Section 8 (a) (5) of the Act turns not upon its good faith, but rather upon the legal question of whether the proposals are obligatory subjects of collective bargaining under the statute. It recognizes that if the proposals are permissible statutory demands, the Company was privileged to adamantly insist upon bargaining as to them, provided the bargaining was conducted in good faith. N. L. R. B. v. American National Ins. Co., 343 U.S. 395, 404, 72 S.Ct. 824, 96 L.Ed. 1027; N. L. R. B. v. United Clay Mines Corp., 6 Cir., 219 F.2d 120. On the other hand, it contends that the proposals are not within the statutory subjects of bargaining, namely, "wages, hours, and other terms and conditions of employment", Sec. 8[d] of the Act, and that the Company's insistence upon them to the point of impasse, even though in good faith, made the action illegal per se. N. L. R. B. v. P. Lorillard Co., 6 Cir., 117 F.2d 921; N. L. R. B. v. Taormina, 5 Cir., 207 F.2d 251; N. L. R. B. v. Dalton Telephone Co., 5 Cir., 187 F.2d 811, certiorari denied 342 U.S. 824, 72 S.Ct. 43, 96 L.Ed. 623; N. L. R. B. v. Corsicana Cotton Mills, 5 Cir., 178 F.2d 344.
 
 
 12
 In Allis-Chalmers Mfg. Co. v. N. L. R. B., 7 Cir., 213 F.2d 374, 376, the Court held that if the strike vote clause in that case was included within the statutory subjects of bargaining the employer was permitted to insist upon its position with respect thereto, provided the bargaining was conducted in good faith, but if it was not included within the statutory subjects of bargaining it could not be insisted upon by the employer to the point of creating an impasse in the negotiations. The Court, however ruled, contrary to the ruling of the Board in this case, that the strike vote proposal fell within the statutory subjects of bargaining about which the employer had the right to bargain in good faith. We are in accord with that ruling, without attempting to pass upon the correctness of the Court's statement with respect to a situation where a proposed clause is not within the statutory subjects of bargaining. The bargaining area of the Act has no well defined boundaries; the phrase "conditions of employment" has not acquired a hardened and precise meaning. Management and labor are now being required to bargain collectively about issues which formerly were not considered as proper issues for inclusion in the usual collective bargaining agreement. Inland Steel Co. v. N. L. R. B., 7 Cir., 170 F.2d 247, 251 (retirement and pension plans); W. W. Cross & Co. v. N. L. R. B., 1 Cir., 174 F.2d 875 (group insurance program); Richfield Oil Corp. v. N. L. R. B., D.C.Cir., 231 F.2d 717 (stock purchase plan); N. L. R. B. v. Niles-Bement-Pond Co., 2 Cir., 199 F.2d 713 (Christmas bonus); N. L. R. B. v. Reed & Prince Mfg. Co., 1 Cir., 205 F.2d 131, 136 (Check-off proposal). The area of compulsory collective bargaining is obviously an expanding one. The Board concedes that a no-strike clause is within the area. N. L. R. B. v. American National Insurance Co., supra, 343 U.S. at page 408, 72 S.Ct. at page 831, note 22. The qualified no-strike proposal of the Company should not be classified differently. Allis-Chalmers Mfg. Co. v. N. L. R. B., supra. In our opinion, the strike ballot proposal was within the area.
 
 
 13
 The Board contends that to permit an employer "to go behind the designated representatives in order to bargain with the employees themselves" would undermine the representative status of the Union contrary to the provisions of Section 9(a) of the Act, 29 U.S.C.A. § 159(a), which provides that the representatives selected by the majority of the employees "shall be the exclusive representatives of all the employees" in the bargaining unit. Medo Photo Supply Corp. v. N. L. R. B., 321 U.S. 678, 684, 685, 687, 64 S.Ct. 830, 88 L.Ed 1007; May Department Stores Co. v. N. L. R. B., 326 U.S. 376, 383-384, 66 S.Ct. 203, 90 L.Ed. 145. In Medo Photo Supply Corp. v. N. L. R. B., [321 U.S. 678, 64 S.Ct. 833] the Court held that orderly collective bargaining requires that the employer be not permitted to go behind the designated representatives, in order to bargain with the employees themselves, even though the employees asked that the designated representatives be disregarded; that the duty of the employer to bargain collectively with the chosen representatives of his employees also involves "`the negative duty to treat with no other.'" In that case, however, the attempt to go behind the designated representatives was without the consent of the representatives. In the present case, there was no attempt to bargain with the employees instead of the designated representatives. The Union was at all times recognized as the exclusive representative of the employees; the bargaining was done with it, not with the employees. Any requirement that the employees approve the action of the Union would be the result of an agreement with the Union to that effect. We do not believe that the ballot proposal denied in any way the unqualified recognition of the certified bargaining agent within the meaning of the Act.
 
 
 14
 The Board urges upon us the ruling in N. L. R. B. v. Corsicana Cotton Mills, 5 Cir., 178 F.2d 344. In that case the employer insisted that the contract contain a provision to the effect that nonunion employees should have a right to attend union meetings and to vote upon the provisions of the contract negotiated by the union as bargaining agent. The Court held that such insistence withheld recognition from the Union as bargaining agent. The facts in that case go far beyond the present case. In that case the certified representative would have been unable to make any binding agreement with the employer, who as a practical matter would be dealing with all of the employees in agreeing upon the terms of the contract. In the present case, the non-union employees are permitted to express their views on only one phase of the contract, which was a matter of such vital importance as to justify an expression of their views.
 
 
 15
 The Company contends that the recognition proposal is also within the bargaining area, pointing out that Section 8(d) of the Act defining the obligation to bargain collectively does not restrict it to conferring in good faith with respect to wages, hours and other terms and conditions of employment but includes "the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached * * *." We do not think the Section is to be so broadly construed. Section 8(a) (5), which imposes the duty of collective bargaining, is by its express terms tied in with Section 9(a) which makes the designated representative the exclusive representative of the employees for the purpose of collective bargaining. This status is acquired by statute and is not within the area of collective bargaining. N. L. R. B. v. Louisville Refining Co., 6 Cir., 102 F.2d 678, 680-681, certiorari denied 308 U.S. 568, 60 S.Ct. 81, 84 L.Ed. 477; N. L. R. B. v. Deena Artware, 6 Cir., 198 F.2d 645, 651, certiorari denied 345 U.S. 906, 73 S.Ct. 644, 97 L.Ed. 1342. Section 8(d) must be construed in connection with Sections 8(a) (5) and 9(a). When so considered, the phrase "negotiation of an agreement, or any question arising thereunder" means the terms of the agreement rather than the party with whom the agreement is being negotiated.
 
 
 16
 The Company attempts to justify its position by pointing out that it at all times recognized the Union as the exclusive bargaining agent and did all of its bargaining with it as such agent. It contends that there is nothing in the Act which requires that after all issues have been agreed upon the written contract embodying the agreement must be made with the agent who negotiated the agreement. Although there is no specific provision to that effect, we believe it is clearly implied that the designated bargaining agent is the party with whom the contract is to be made unless it voluntarily relinquishes such right in favor of another. The collective bargaining contract is not the contract of employment. It is rather the trade agreement which controls the individual contracts of employment. J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 64 S. Ct. 576, 88 L.Ed. 762. It is a strained construction of the Act to say that the party representing the employees and negotiating such a trade agreement for their benefit is not entitled to complete the job by having the contract which it has negotiated executed with it as the representative of the individual employees for whom it is acting. Such a contract is necessarily executed with a representative of the individual employees. We fail to see the reasoning which would authorize the substitution of the Local, not the official representative of the employees, for the Union which is the official representative of the employees, over the objections of the Union. The fact that the Union offered to share this right with its Local did not give the Company the right to insist that it relinquish the right completely. The Company was not within its rights in insisting upon its proposal pertaining to this phase of the case.
 
 
 17
 While the strike was in progress the Company solicited its employees through newspaper and radio advertising to return to work. It stressed the advantages to be derived by returning to work and the unreasonableness of the Union's demands. It offered free bus transportation for this purpose. Two Company foremen visited the Local's vice-president at his home for that purpose and suggested that an agreement might be arrived at "if the Local would forget the International." The Board ruled that such conduct violated Section 8(a) (1) of the Act because it was an attempt to deal individually with the employees rather than with the Union and was reasonably calculated to undermine the Union. We recognize the rule urged upon us by the Company that communications with employees by an employer are protected under the First Amendment of the Constitution so long as such communications contain no threat of reprisal or promise of benefit. N. L. R. B. v. Ford Motor Co., 6 Cir., 114 F.2d 905, 913-915, certiorari denied, 312 U.S. 689, 61 S.Ct. 621, 85 L.Ed. 1126; N. L. R. B. v. Cleveland Trust Co., 6 Cir., 214 F.2d 95, 99. Under the rule the employer is free to say to his employees that he wishes to carry on production and, if the employees desire so to do, they may return to work. N. L. R. B. v. Bradley Washfountain Co., 7 Cir., 192 F.2d 144, 153. For the purposes of this opinion, it is sufficient to say that in our opinion the communications complained of went beyond permissible limits. N. L. R. B. v. Montgomery Ward & Co., 9 Cir., 133 F.2d 676, 681, 146 A.L.R. 1045; N. L. R. B. v. Clearfield Cheese Co., 3 Cir., 213 F.2d 70, 72-73; N. L. R. B. v. James Thompson & Co., 2 Cir., 208 F.2d 743, 748; May Department Stores Co. v. N. L. R. B., 326 U.S. 376, 385, 66 S.Ct. 203, 90 L. Ed. 145.
 
 
 18
 The Company also advised its striking employees by newspaper advertisement and individual letters that their jobs were still open if they returned to work, that the Company was hiring new people every day but would hold the jobs open until Monday, April 20, 1953, at which time it would start hiring replacements, and that setting a deadline for return was a necessary move in order to know who was returning and who was not. In a letter of April 15, 1953 it was said: "If you do not return, I wish you the best of success in your new job whatever and wherever it may be." In a letter of April 22, 1953, addressed to "Those Who Chose to Give Up Their Jobs at Wooster Division" the Company's President stated: "When you did not report for work on April 20, it became apparent that you had decided to give up your job here." The Board found this to be a violation of Section 8(a) (1) of the Act in that it was an attempt to cause the employees to abandon the strike by unlawful threats of discharge.
 
 
 19
 There is authority to the effect that notice to a striking employee that he will lose his job unless he returns to work by a certain dead-line is an illegal discharge. N. L. R. B. v. U. S. Cold Storage Corp., 5 Cir., 203 F.2d 924, 927, certiorari denied, 346 U.S. 818, 74 S.Ct. 30, 98 L.Ed. 344; N. L. R. B. v. Beaver Meadow Creamery, 3 Cir., 215 F.2d 247, 252; N. L. R. B. v. Clearfield Cheese Co., supra, 3 Cir., 213 F.2d 70, 72-73. There are other cases which hold that where striking employees are subject to being replaced it is not an unfair labor practice to notify them that their jobs are available until a certain time at which time replacements will be sought. Kansas Milling Co. v. N. L. R. B., 10 Cir., 185 F.2d 413, 419-420; N. L. R. B. v. Hart Cotton Mills, 4 Cir., 190 F.2d 964, 973; N. L. R. B. v. Bradley Washfountain Co., supra, 7 Cir., 192 F.2d 144, 153-154; Rubin Bros. Footwear, Inc., v. N. L. R. B., 5 Cir., 203 F. 2d 486, 487. This Court has also so ruled. Ohio Associated Tel. Co. v. N. L. R. B., 6 Cir., 192 F.2d 664, 667-668; Shopmen's Local Union, etc. v. N. L. R. B., 6 Cir., 219 F.2d 874. In the present case, the newspaper advertisement stated — "We would prefer to have you return to your own job." The letter of April 15, 1953, contained the statement: "I sincerely hope you will return by Monday, April 20. You may be sure you will be most welcome." We do not consider the advertisement and letters with respect to replacements an unfair labor practice.
 
 
 20
 In dismissing so much of the complaint as sought reinstatement of 36 employees the Board found that the record failed to establish that the economic strikers were discriminated against with respect to their reinstatement, and that substantially all of the striking employees were eventually reinstated in accordance with a detailed plan worked out between the Company and the Local. This agreement, dated May 2, 1953, stated that the Company had 59 jobs available, which were not sufficient to take care of all striking employees. It divided the employees who had not returned to work into two classifications, (1) those whose jobs had not been replaced or for whom there were job openings, and (2) those whose jobs had been replaced or whose jobs had been eliminated. Under the specified procedure the available jobs were offered to those in the first classification before being made available for those in the second classification.
 
 
 21
 This method of reinstatement and its approval by the Board was based upon the Board's ruling that the strike was an economic one rather than an unfair labor practice strike. It is settled law that where the strike is an economic one the employer can replace the striking employees with others in an effort to carry on the business and is not required to discharge those hired to fill the places of strikers upon the election of the latter to resume their employment. N. L. R. B. v. Mackay Radio & Telegraph Co., 304 U.S. 333, 345-346, 58 S. Ct. 904, 82 L.Ed. 1381. But he can not discharge economic strikers prior to the time their jobs are filled, or discriminate against them by reason of the strike in reinstating those whose jobs have not been filled. Sec. 2(3) and 8(a) (3) of the Act, Sec. 152(3) and 158(a) (3), Title 29 U.S.C.A. N. L. R. B. v. U. S. Cold Storage Corp., supra, 5 Cir., 203 F.2d 924, 927; Hamilton v. N. L. R. B., 6 Cir., 160 F.2d 465, 468-469.
 
 
 22
 However, if the strike is caused by an unfair labor practice, the striking employees are entitled to reinstatement upon termination of the strike. N. L. R. B. v. Deena Artware, supra, 6 Cir., 198 F.2d 645; N. L. R. B. v. Thayer Co., 1 Cir., 213 F.2d 748, 752, certiorari denied 348 U.S. 883, 75 S.Ct. 123, 99 L. Ed. 694; N. L. R. B. v. Pecheur Lozenge Co., 2 Cir., 209 F.2d 393, 404-405, certiorari denied 347 U.S. 953, 74 S.Ct. 678, 98 L.Ed. 1099. The Board found that the record did not establish by a preponderance of the evidence that the strike was caused by the Company's refusal to bargain rather than by a failure to reach agreement on the economic issues in dispute. This finding is vigorously challenged by the Union.
 
 
 23
 The main objective of the Union was to obtain for the Wooster Division employees the higher wages and benefits which it had previously obtained for the Pesco Division employees. The Union's first proposal was substantially what it had obtained in its Pesco contract. The Company's economic proposals were compared with the provisions of the Pesco contract and their shortcomings emphasized. Members of the Pesco Local attended union meetings. The Pesco Local pledged its support in the event of a strike. The Union's proposal on March 19, the day before the strike, listed 30 issues as still in dispute. During the strike Union bulletins and newspaper advertisements discussed the economic issues involved without referring to the recognition clause. Inferences from proven facts may be drawn by the Board which differ from those drawn by the examiner. N. L. R. B. v. Wiltse, 6 Cir., 188 F.2d 917, 925. Giving full consideration to the trial examiner's contrary view in accordance with the ruling in Universal Camera Corporation v. N. L. R. B., 340 U.S. 474, 492-497, 71 S.Ct. 456, 95 L.Ed. 456, we think the evidence sustains a finding that the dispute over the economic issues was a cause of the strike.
 
 
 24
 The Union contends that in any event the unfair labor practice of the Company was a contributing cause of the strike which as a matter of law requires that the strike be treated as an unfair labor practice strike. That such is the legal consequence of such a factual situation appears settled. N. L. R. B. v. Remington Rand, Inc., 2 Cir., 94 F.2d 862, 872, certiorari denied 304 U.S. 576, 58 S.Ct. 1046, 82 L.Ed. 1540; N. L. R. B. v. A. Sartorius & Co., 2 Cir., 140 F.2d 203, 206; N. L. R. B. v. Stilley Plywood Co., 4 Cir., 199 F.2d 319. The burden rested upon the Company to show that the strike would have taken place even if it had not insisted upon its recognition proposal. N. L. R. B. v. Stackpole Carbon Co., 3 Cir., 105 F.2d 167, 176, certiorari denied 308 U.S. 605, 60 S.Ct. 142, 84 L.Ed. 506. We do not construe the findings of the Board as including an express finding on this factual issue. Counsel for the Board apparently so concedes by his statement in the brief that "the Board in effect found" such to be the case. We agree with counsel for the Union that the Board's findings are inadequate with respect to this issue which is controlling on the question of reinstatement. The Union also challenges the validity of the agreement under which reinstatement was carried out. On these issues the case is remanded to the Board for further findings and rulings.
 
 
 25
 The order of the Board is modified by striking therefrom the words "and employee ballot proposals or any other proposals not involving conditions of employment" in paragraph 1(b), the words "and threatening its employees with loss of employment unless they abandon the strike" in paragraph 1(c), and the final paragraph dismissing so much of the complaint dealing with the alleged refusal of the Company to reinstate certain employees, with like modifications of the posted notice, and as so modified enforcement of the order is decreed. The case is remanded to the Board for further findings and rulings in accordance with the Court's opinion herein.